33844.   ELLIOTT *v.* FLOYD *et al.*

Decided February 28, 1952.

418

*R. B. Pullen,* for plaintiff.

*Fraser & Shelfer, E. R. Tyson,* pro se, for defendant.

SUTTON, C. J. ■ Ground 4 of the motion for a new trial sets out the portions of the original charge of the court to the jury, applicable to the issue of partnership as raised by the evidence, which was satisfactory to the movant. After retiring and deliberating for some time, the jury returned to the courtroom, where the foreman said to the court, "We would like to ask the question, like to ask you to read that reference there to what constitutes a partnership in the State of Georgia." The trial judge then read again Code §§ 75-101 and 75-102, and asked the foreman, "Now was that the section?" The foreman replied, "I think that covers it." A juror said, "I believe there were two. What else did you have in mind?" Another juror replied, "I guess that is it." The court stated, "If there is anything further, I can have the reporter read back what I charged again, if there is anything further." The foreman said, "I think that about covers it, Your Honor."

A juror then addressed the court as follows: "There is one question there, Judge, that we were considering, as to whether the fact that part of the gross profits were paid out by both

parties, whether that actually meant that, or helped constitute a partnership." The trial judge then charged as follows: "Gentlemen, you will have to consider all of the facts in the case, as to whether or not it actually created a partnership. Now the law says that joint interest in the profits and losses of a business shall constitute a partnership so far as third persons are concerned. A common interest in the profits alone shall not. Now I further charged you, and I will be glad to have it read, have that read over to you again or restate it to you again, that if there is just no understanding about losses, in other words, they just don't contemplate that there are going to be any losses, then the law would presume if they otherwise intended to form a partnership and the only agreement they had was, 'what we will do with the profits,' then the law would presume that they were both going to be liable for the losses, if any. On the other hand, if it was distinctly and definitely understood that he is not going to be liable for any of the losses, why it definitely is not a partnership. On the other hand, if there is just nothing said about it and the only thing they discuss is what they are going to do with the profits and they don't anticipate ever losing anything, why then the law would presume that both would share in the losses as well as in the profits and it would be a partnership. Does that answer your question?" The foreman answered, "Yes, I think so," and a juror said, "Yes."

The movant complains that the recharge was not in conformity with the request of the jury, but that the court undertook to recharge the jury on the law covering the formation of partnerships, the effect of which was to withdraw the correct charge previously given by the court; that the recharge did not authorize the jury to find that Floyd was an ostensible partner as shown by the evidence; and that the recharge was erroneous for the reason that only so much of the law was recharged by the court as the jury desired, without regard to a recharge on the whole question of law concerning the question of partnership.

In ground 5, the movant assigns error on the overruling of his motion to recall the jury, to withdraw the recharge, and to charge the jury on the whole question of law as to what constituted a partnership or to read the charge as originally given, as to the contents of which the jury was in doubt, which ruling

was harmful in that it excluded from the jury the consideration of an ostensible partnership and covered only so much of the law as the individual jurors desired.

We think that the recharge of the court was in conformity with the request of the jury and answered their questions, and was not error for any reason assigned. The trial judge gave the additional charge requested with a fuller explanation and application to the facts than he had originally made, and this part of the charge was favorable to the plaintiff, rather than prejudicial against him.

The contention of the movant, that it was error to fail to recharge that "An ostensible partner is one whose name appears to the world as such, and he shall be bound though he has no interest in the firm," is without merit, for it does not appear that the jury was in doubt about this principle, which was given to the jury in the original charge. The trial judge need not reread or again give his entire charge, but need charge only such parts thereof as are necessary to answer the jury's request, for it may be assumed that the jurors have comprehended such parts of the original charge as were correctly stated to them and concerning which they have raised no question. See *Kerns* v. *Crawford,* 51 *Ga. App.* 158 (179 S. E. 854); *Shermer* v. *Crowe,* 53 *Ga. App.* 418 (186 S. E. 224); *Southeastern Greyhound Lines* v. *Durham,* 62 *Ga. App.* 99 (8 S. E. 2d, 99). Ground 5 is also without merit.

■ The verdict was authorized by the evidence. Floyd's testimony showed that Tyson was not his partner, but was his employee or agent and was to be paid for his services by a percentage of the profits from the business, if any, as a measure of his compensation and without his having an interest therein. Tyson testified, in part, that he had been managing Webster's lot for several years; that he agreed to stay on and manage the same lot for Floyd, for 50% of what they were going to make instead of a salary; and that he had put no money into the business. See *Hannifin* v. *Wolpert,* 56 *Ga. App.* 466 (193 S. E. 81); *Sauls* v. *Scott,* 46 *Ga. App.* 243 (167 S. E. 311); *Moore* v. *Harrison,* 202 *Ga.* 814 (44 S. E. 2d, 551); *Dawson National Bank* v. *Ward,* 120 *Ga.* 861 (48 S. E. 313).

While it is true that the testimony of the plaintiff, to the effect that Tyson had introduced Floyd to him as a partner, was not

controverted, there was no evidence showing that the plaintiff dealt with Gateway Motor Company on the faith of such representation or that this caused him to do so. "Persons who are mere apparent partners as distinguished from actual partners, are responsible as such only to those who have acted on the faith that the appearance was according to the reality." *Bowie* v. *Maddox*, 29 *Ga.* 285 (3) (74 Am. D. 61). "It must appear that the opposite party acted upon the putative status and was misled thereby." *Mims* v. *Brook & Co.*, 3 *Ga. App.* 247, 249 (59 S. E. 711). See also *Stewart* v. *Brown*, 102 *Ga.* 836 (30 S. E. 264). The plaintiff testified that he had dealt with Tyson and Webster as Gateway Motor Company for three or four years before that time, and continued to trade in used automobiles with Tyson when Floyd purchased the business from Webster. It further appeared that the checks for the debt sued on were made out on forms entitled, "E. R. Tyson, Used Cars," rather than "Gateway Motor Company," and they were signed by Tyson alone. This indicates that the plaintiff was not relying on an apparent partnership which might have been created by Tyson's introduction of Floyd to him nine months previously.

The verdict was supported by the evidence, and the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*